Case number four for argument today is Mandacina v. Entzel. Mr. Sample. Good morning, Your Honors, and may it please the Court. Brandon Sample for the appellant, John Mandacina. Your Honors, the government in this case failed to disclose to Mandacina that a key witness, former FBI agent Daniel Kraft, had engaged in, been disciplined for conspiring to falsify information related to polygraph results. Mandacina didn't learn of this information until many, many, many years later after the district court in his case had already denied 2255 relief. He was up on appeal in the Eighth Circuit, and his lawyers attempted to try to supplement the case with this claim, and as the district court in here, which subsequently entertained this very argument in the context of it being presented in a 2241 petition, said that it appeared that the Eighth Circuit had not really taken that matter up. To date, Mandacina, who is serving a life sentence, has never had an effective round of collateral review of whether or not the government violated Giglio, and he's certainly had no reasonable opportunity to present this argument in the habeas context to any other court before. And it's our position, Your Honors, that the district court erred in does not encompass the type of Giglio claim that was presented here. Can we talk about the United States v. Evans for a minute? Because there, we held that a Brady claim brought in a successive motion would proceed under the language in 2255H and had to establish by clear and convincing evidence that no reasonable fact finder would have found him guilty of the offense. Would your interpretation of the savings clause render that limitation a nullity because any claim that couldn't meet that high bar could proceed directly to a 2241 petition and use the lower reasonable probability standard? I think, Your Honor, that for purposes of being able to rely upon the, to invoke 2241, that where Evans and its potential applicability raises a choice of law question. With respect to 2255, here we have an out-of-circuit defendant originally from the Eighth Circuit, and that the proper analysis for determining whether or not the savings clause could be satisfied in this case is whether or not in the Eighth Circuit he would have had the ability to be able to raise this kind of claim by a second or successive 2255. And we kind of discussed this in our brief, Your Honor, and we also raised it in the district court. We argued that the Baranski case where the Eighth Circuit had entertained a quorum novus petition by a defendant who had argued a Giglio claim, very much like the kind of claim that was presented here, that it would not be cognizable. And the Eighth Circuit said that that type of Giglio claim in Baranski was not cognizable. So if we approach this from the perspective of, well, what was available to the defendant? Mr. Sample? Have we lost audio on Mr. Sample? Yes. Oh, dear. Oh, dear. Now we've lost Mr. Sample. Mr. Sample? Are we sending out a search party for Mr. Sample? Oh. Alert the bloodhounds. Oh, send them here, too. Well, this happened last week, too. I'm not sure what we did to cure that one. Last week, the problem was that the entire judiciary network crashed. And Zoom became unusable. We followed that up on AT&T. Oh, poor man, he must be. He's in a world of his own with his headphones on and probably can't hear the phone ringing. Yeah. Oh, dear. Who else monitors this? We are. There's a problem. I'm sorry, Dan. I couldn't hear that. I'm just wondering who else. It's running the show knows where we have a problem. Members of the clerk staff here in the courtroom. Who are working the issue. Okay. Yes, this is attorney granted sample calling in. Okay. Mr. Sample, we lost you. About half. Yes, your honor. Through the argument. And my apologies. I don't know what happened. I don't know what happened. It just. Zoom meeting. Fail. So, as I was explaining to the court. I believe that in this situation, that the Evans case does not serve as an obstacle to Mr. Mancina. Proceeding by 2241 here. Beyond that. There's other just. Mr. Sample. Lest we lose you again. Let, let me ask you. One of. The questions that bug me, which is. Even in the world. As it was before the 1996 amendments. It seems to me your, this claim might well have been dismissed as an abuse of the writ. Man to seen a new, everything he needed to know. In about 2005, when he presented. The argument to the eighth circuit. But he didn't file a petition under 2241 until 2018. 13 years later. Isn't that the kind of delay that would cause a petition to have been dismissed as an abuse of the writ. Before. 1996. Your honor. I believe that there are some cases that have held that there's no time limit on the file. There is no time limit. The time limit wasn't enacted until 1996. But nonetheless. Delay was an important consideration in the doctrine of abuse of the writ. Right. One of the, one of the problems is. That it's extraordinarily difficult to retry a case. A generation after the original trial. And if the defendant waits and waits and waits. It's very difficult to see how we can call on judicial assistance. I, and I understand your honor's point and I, I. I completely agree that. This type of delay could potentially serve to be prejudicial. However, in the government did not assert. To my recollection, any type of abuse of the writ argument. That's because the prosecutor says. That 2241 is not available at all. But the kind of question I'm asking is. Suppose 2241 is available in principle. Can you get anywhere? In, in the context of this case, your honor, we believe that we can because any argument concerning the abuse of the writ, we would, we would assert is waived at this time. If the district judge had found the 2241 was available. Then all these arguments would have to be made. But the district judge didn't find that. Well, with your honor, we would, we would want the opportunity. If this court determined that he could proceed by a 2241 to argue on remand, why this is not an abuse of the red. In this particular, in this type of case. Here we have. What is ostensibly very serious governmental misconduct. And. Mr. Mendocino has now finally presented this issue. To a court of competent. Ability to be able to provide him with the remedy. And we believe that. The district court could in fact do that. And, and to the extent that. That argument is open on remand. If the court was to find that 2241 is available, we, we would certainly want the opportunity for the district court to address that in the first instance, after. Full consideration of the arguments from both sides. In all your honors, you know, we, we believe that Congress did not intend to preclude this type of claim. From consideration by 2241. It is it. In many ways seems to, to turn things on its head. Where the government has. Been alleged to withheld evidence. As the district court recognized. When the, there is a. A Brady or Giglio type violation. That's a quintessential example. That the defendant was deprived of a fair trial. And. Ms. Manessina would argue that he should have the opportunity to be able to. Proceed on his claims by 2241 district court. And with that in mind, I would reserve the balance of my time. Certainly counsel. Mr. Simpson. Good morning, your honors. Thank you. And may it please the court. I'm Scott Simpson on behalf of the respondent warden here. And I'd like to begin with a brief history of this case. This case is a good illustration of the need for finality and criminal judgment. Amanda Sina was sentenced for witness retaliation and a murder for higher. In 1993. That was 27 years ago. And as, as we've been discussing. In 2005, that was 15 years ago. The eighth circuit denied his application to file a second. 2255 motion that actually made the same claim he makes here. Contrary to what petitioners counsel has said. This is not. Mr. Mendocino's first opportunity to have his case heard. And I would like to begin with a brief history of this case. The crux of this case. Is Congress's deliberate. Between the finality of criminal judgments. And the ability to challenge a judgment based on newly discovered evidence where that's appropriate. Forgive me. Hello. Why. Why. Please tell us why. You think. We should adopt. A view of the savings clause. That would effectively. Eliminate review for nearly all Giglio. Or Brady cases. In which the government managed to conceal the evidence beyond the reasonable fact. Circumstances under which newly discovered evidence. You're allowed to reopen a judgment. And that decision is expressed in 2255 eight. Is that. We discovered evidence. You're allowed to reopen a judgment. Established by clear and convincing evidence. No reasonable fact. I'm sorry. I'm sorry. We're dealing with potentially impeaching evidence. And that doesn't. It doesn't satisfy that pressure. Not only is. Mr. Mendocino not relying on direct evidence. Innocence. He doesn't even allege that. Perhaps misconduct. I'm sorry. I don't know if you're chopping to everyone else. But I'm for. At least I I'm missing. Your work. And I really want to. I'm sorry, your honor. I don't know if it's your fault. Mr. Sample, could you please mute your phone during. We're hearing a lot of background from you. Thank you. I'm sorry, your honor. Let me try again and please let me know. Thank you. This is a great challenge to do arguments this way. We submit that. That Congress has decided that newly discovered evidence. Should be allowed to open a judgment.    Should be allowed to open a judgment. Only when it would establish by clear and convincing evidence. That no reasonable fact finder would find that offended guilty. Here. The evidence involved here is only impeaching, potentially impeaching evidence. And that kind of evidence doesn't satisfy that threshold. Not only is Mr. Mendocino not relying on direct evidence of guilt or innocence. He also doesn't allege that any of agent crafts misconduct actually had anything to do with his particular case. This evidence also does not satisfy the saving clause of 22 55. And this court's Davenport test. Among other things, the petitioner is not relying on a new rule of statutory interpretation. The, the, the core of the problem here, your honor, your honors, is that Congress cannot have intended the saving clause to be satisfied in this kind of situation. If newly discovered evidence of a merely impeaching nature like that involved here. Could satisfy the saving clause in 22 55 E. Then the limitation on newly discovered evidence in 22 55 H would mean nothing. There's also no basis to analogize this case to Webster, which petitioner tried to do in his, in his appellate brief. This court in Webster emphasize the uniqueness of the situation in that case.  As the defendant sought to submit evidence that his death sentence was unconstitutional. And nothing like that is involved here. The petitioner here was sentenced to life in prison rather than death. And his petition isn't based on evidence that his sentence was unconstitutional, but merely evidence that could possibly be used to impeach the liability of a witness. Also the holding in Webster was based on a Supreme court decisions about the death penalty that post dated Congress's enactment of the limitations in 22 55. Whereas here, we glial principles on which petitioner relies were well-established when Congress enacted those limitations. Well, do you want to then talk about the alpha I'm sorry, your honor, which case the alpha it was a recent, you may not be aware of it. Yeah. Okay. We could certainly do a 28 day letter on that. If the court would like it. That would be up to judge Easterbrook. I I'll look at that decision, your honor, after the argument. And, and certainly if it seems like we can submit a 28 day letter, what we said in the alpha was this circuit is held that section 22, 55 can be deemed inadequate or ineffective when newly disclosed facts support a constitutional theory that could not have been litigated on an initial proceeding under 22, 55 citing Webster. And that characterization might apply to Mendocino's giglio claim, because the giglio theory could not have been litigated in the initial proceeding. So anyway, I'll look at that decision, your honor. And thank you for bringing that up. I would point out though, that all of, as I said, all of the giglio principles that on, on which the claim here is, is based were available to Mr. Mendocino and the, the, the evidence that we're talking about has been available. And he, he sought the the eight circuits permission to do a second, subsequent, a second or successive 22 55 motion. And that court decided that 22 55 H was not satisfied. And as we've been saying, 22 55 H reflects Congress's decision regarding when newly discovered evidence should be allowed to reopen a judgment to quote. If I could quote the, this just one sentence from the, from the district court's decision here, the court there, judge Darrow said it can be assumed that Congress took such claims into account. That is the giglio claim here took such claims into account when writing the statute. And that Congress found that later discovered giglio claims were not the type that deserved a second bite of the apple. One other point about the procedural history here, your honor judge, Mr. Mendocino has already previously used a full plant panoply of post-trial remedies to try to overturn his conviction and sentence. He did a direct appeal. He did the first motion under 22 55, where he sought to bring his current giglio in a motion to supplement on appeal. And he did that application to file a second motion under 22 55 to, to end here at your honors where I started with the need for finality as justice Harlan said many years ago, no one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment, providing that a man shall tentatively go to jail today, but tomorrow and every day thereafter, his continued incarceration shall be subject to fresh litigation. Close quote. And though after 27 years, your honors, the sentence in this case should be final. Thank you. Thank you, Mr. Simpson. Anything further, Mr. Sample, just very briefly, your honor. I would just like to point out that the district court in this case specifically recognize, and I quote that agent craft testimony and rock reliability was at a trial. The, the, the notion that agent craft and his misconduct somehow bears no, nothing on the reliability of the trial or that it could have impacted ultimately the jury's determination of guilt. We assert is incorrect. And based on all the arguments that we presented, both in writing and here today, we would respectfully ask the court to reverse the judgment of the district court and remand. So it may consider Mr. Mendocino's arguments on their merits. Thank you. Counsel cases taken under advisement.